## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PATRICK PLUMLEY, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| PIVOTAL SOFTWARE, INC., PAUL MARITZ, MICHAEL S. DELL, EGON DURBAN, WILLIAM D. GREEN, MARCY S. KLEVORN, MADELYN LANKTON, ROBERT MEE, and ZANE ROWE, | ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on August 22, 2019 (the "Proposed Transaction"), pursuant to which Pivotal Software, Inc. ("Pivotal" or the "Company") will be acquired by VMware, Inc. ("Parent") and Raven Transaction Sub, Inc. ("Merger Sub," and together with Parent, "VMware").  Pivotal and Parent are majority-owned subsidiaries of Dell Technologies, Inc. ("Dell Technologies").

2.      On August 22, 2019, Pivotal's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with VMware.  Pursuant to the terms of the Merger Agreement, Pivotal's Class A stockholders will receive $15.00 in cash for each share of Pivotal Class A common stock they own.

3.      On October 10, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.   Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Pivotal common stock.

9.      Defendant Pivotal is a Delaware corporation and maintains its principal executive offices at 875 Howard Street, Fifth Floor, San Francisco, California 94103.  Pivotal's common stock is traded on the New York Stock Exchange under the ticker symbol "PVTL."

10.     Defendant Paul Maritz ("Maritz") is Chairman of the Board of the Company. Maritz has served as Chief Strategist at DellEMC and as Chief Executive Officer, President, and a director of VMware. Maritz was also President of DellEMC's Cloud Infrastructure and Services Division.

11.     Defendant Michael S. Dell ("Dell") is a director of the Company. Dell is Founder, Chief Executive Officer, and Chairman of the Board of Dell Technologies. Dell also serves as a director and non-executive Chairman of the board of directors of VMware.

12.     Defendant Egon Durban ("Durban") is a director of the Company. Durban is a director of Dell Technologies. Durban also serves on the board of directors of VMware.

13.     Defendant William D. Green ("Green") is a director of the Company. Green is a director of Dell Technologies and previously served as a director of DellEMC.

14.     Defendant Marcy S. Levorn ("Levorn") is a director of the Company. Levorn is a member of the so-called special committee of the Board (the "Special Committee").

15.     Defendant Madelyn Lankton ("Lankton") is a director of the Company. Lankton is a member of the Special Committee.

16.     Defendant Robert Mee ("Mee") is Chief Executive Officer and a director of the Company. Mee led the Pivotal Labs Division at DellEMC.

17.     Defendant Zane Rowe ("Rowe") is a director of the Company. Rowe is Chief Financial Officer and Executive Vice President of VMware and served as Executive Vice President and Chief Financial Officer of DellEMC.

18.     The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Pivotal (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20.     This action is properly maintainable as a class action.

21.     The Class is so numerous that joinder of all members is impracticable.  As of August 20, 2019, there were approximately 99,279,940 shares of Pivotal Class A common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

26.     Pivotal provides a leading cloud-native platform that makes software development and information technology operations a strategic advantage for its customers.  The Company's cloud-native platform, Pivotal Cloud Foundry, accelerates and streamlines software development by reducing the complexity of building, deploying, and operating new cloud-native applications and modernizing legacy applications.

27.     According to the Proxy Statement:

Pivotal was formed in April 2013 by EMC Corporation, now an indirectly wholly owned subsidiary of Dell, and VMware, now a majority-owned subsidiary of EMC Corporation. Since Pivotal's inception and through August 30, 2019, EMC Corporation has beneficially owned a majority of Pivotal's stock. As of August 30, 2019, Dell beneficially owned 175,514,272 shares of Class B common stock, including 44,208,162 shares of Class B common stock held directly by VMware, which in the aggregate represent approximately 63.8% of Pivotal's outstanding common stock (including the 16.1% of Pivotal's outstanding common stock held directly by VMware) and approximately 94.6% of the combined voting power of both classes of Pivotal's outstanding common stock. Dell is also a controlling stockholder of VMware, beneficially owning all of the outstanding VMware Class B common stock and 30,678,605 shares, or approximately 28.2% of the outstanding VMware Class A common stock, representing in the aggregate approximately 97.5% of the combined voting power of both classes of VMware's common stock and approximately 80.9% of the total outstanding common stock of VMware, in each case as of August 30, 2019. Michael S. Dell is the Chairman and CEO of Dell, a member of the Pivotal Board and the VMware Board, respectively, and, as of August 30, 2019, was the beneficial owner of Dell common stock representing a majority of the total voting power of the outstanding shares of capital stock of Dell.

28.     Individual Defendant Maritz, Chairman of the Board of the Company, has served as Chief Strategist at DellEMC and as Chief Executive Officer, President, and a director of VMware.  Maritz was also President of DellEMC's Cloud Infrastructure and Services Division.

29.     Individual Defendant Dell is a director of the Company and Founder, Chief Executive Officer, and Chairman of the Board of Dell Technologies.  Dell also serves as a director and non-executive Chairman of the board of directors of VMware.

30.     Individual Defendant Durban is a director of the Company, Dell Technologies, and VMware.

31.     Individual Defendant Green is a director of the Company and Dell Technologies and previously served as a director of DellEMC.

32.     Individual Defendant Mee, Chief Executive Officer and a director of the Company, led the Pivotal Labs Division at DellEMC.

33.     Individual Defendant Rowe, a director of the Company, is Chief Financial Officer and Executive Vice President of VMware and served as Executive Vice President and Chief Financial Officer of DellEMC.

***The Proposed Transaction***

34.     On August 22, 2019, Pivotal's Board caused the Company to enter into the Merger Agreement with VMware.

35.     Pursuant to the terms of the Merger Agreement, Pivotal's Class A stockholders will receive $15.00 in cash for each share of Pivotal Class A common stock they own.

36.     According to the press release announcing the Proposed Transaction:

VMware, Inc. (NYSE: VMW), a leading innovator in enterprise software, and Pivotal Software, Inc. (NYSE: PVTL), a leading cloud-native platform provider, today announced that the companies have entered into a definitive agreement under which VMware will acquire Pivotal for a blended price per share of $11.71,

comprised of $15 per share in cash to Class A stockholders, and the exchange of shares of VMware's Class B common stock for shares of Pivotal Class B common stock held by Dell Technologies, at an exchange ratio of 0.0550 shares of VMware Class B stock for each share of Pivotal Class B stock.  In total, the merger consideration represents an enterprise value for Pivotal of $2.7 billion. The Board of Directors of each of VMware and Pivotal have approved this transaction, following the recommendations of special committees composed of independent directors of each company. Following the close of the transaction, VMware will be positioned to deliver the most comprehensive enterprise-grade Kubernetes-based portfolio for modern applications. . . .

Details Regarding the Transaction

Under the terms of the transaction, Pivotal's Class A common stockholders will receive $15.00 per share cash for each share held, and Pivotal's Class B common stockholder, Dell Technologies, will receive approximately 7.2 million shares of VMware Class B common stock, at an exchange ratio of 0.0550 shares of VMware Class B common stock for each share of Pivotal Class B common stock. This transaction, in aggregate, results in an expected net cash payout for VMware of $0.8 billion. The impact of equity issued to Dell Technologies would increase its ownership stake in VMware by approximately 0.34 percentage points to 81.09% based on the shares currently outstanding. VMware currently holds 15 percent of fully-diluted outstanding shares of Pivotal. The transaction is expected to be funded through cash on the balance sheet, accessing short-term borrowing capacity, and approximately 7.2 million shares of VMware Class B common stock to Dell. Closing of the transaction is subject to customary closing conditions including the approval of the merger agreement by the holders of at least a majority of the outstanding shares of Pivotal common stock not owned by VMware or Dell Technologies or their affiliates (a "majority-of-the-minority" vote) and is expected in the second half of VMware's fiscal year 2020, which ends January 31, 2020.

Advisors

J.P. Morgan Securities LLC served as financial advisor and Wilson Sonsini Goodrich & Rosati served as legal counsel to VMware.  Lazard served as financial advisor and Gibson, Dunn & Crutcher LLP served as legal counsel to the Special Committee of the VMware Board of Directors.  Davis Polk & Wardwell LLP served as legal counsel to Pivotal. Morgan Stanley & Co. LLC served as financial advisor and Latham & Watkins, LLP served as legal counsel to the Special Committee of the Pivotal Board of Directors.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

37.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed

Transaction.

38.     As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

39.     First, the Proxy Statement omits material information regarding the process leading up to the execution of the Merger Agreement.

40.     The Proxy Statement provides that members of Pivotal management were apparently present at all of the Special Committee's meetings excluding its first introductory meeting.  However, the Proxy Statement fails to disclose which members of Pivotal management were present at the meetings (particularly whether any members of management affiliated with Dell Technologies, VMware, or their affiliates were present) as well as the reasons they were present at the meetings.

41.     The Proxy Statement fails to disclose how the Special Committee determined to make a $15.75 per share counteroffer to VMware on August 6, 2019, following its $16.50 per share counteroffer the day before, which was purportedly made because it represented a 10% premium to the price per share of Class A common stock in Pivotal's initial public offering.

42.     The Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications.

43.     The Company's stockholders are entitled to an accurate description of the process leading up to the Proposed Transaction.

44.     Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley").

45.     The Proxy Statement fails to disclose the nature of the past services Morgan Stanley provided to VMware, Dell Technologies, and their affiliates.

46.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

47.     Third, the Proxy Statement omits material information regarding the Company's financial projections.

48.     The Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate EBIT and EBITDA; (ii) projected net debt for all years; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

49.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

50.     The omission of the above-referenced material information renders the Proxy Statement false and misleading.

51.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Pivotal**

52.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in

light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Pivotal is liable as the issuer of these statements.

54.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

55.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

56.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

57.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

58.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

59.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

60.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61.     The Individual Defendants acted as controlling persons of Pivotal within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Pivotal and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

62.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

63.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

64.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and

proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 17, 2019

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*
     Brian D. Long (#4347)

**OF COUNSEL:**
     Gina M. Serra (#5387)
     300 Delaware Avenue, Suite 1220

**RM LAW, P.C.**
     Wilmington, DE 19801
Richard A. Maniskas
     Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300
     Facsimile: (302) 654-7530
Berwyn, PA 19312
     Email: bdl@rl-legal.com
Telephone: (484) 324-6800
     Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com

     *Attorneys for Plaintiff*